**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| JACK K. BYRD, JR. FAMILY TRUST and JACK BYRD, III,<br><br>Plaintiffs,<br>v.<br><br>WILSON COUNTY, TENNESSEE, RANDALL HUTTO, in his individual and official capacities as Mayor of Wilson County; KAREN MURPHY, in her individual and official capacities as Zoning Director of Wilson County, and JEREMY HOBBS, in his individual and official capacities as county commissioner in Wilson County,<br><br>Defendants. | Civil Action File No. |

## COMPLAINT

Plaintiffs bring this action against Wilson County, Tennessee, Randall Hutto, in his individual and official capacities as Mayor of Wilson County, Tennessee, Karen Murphy, in her individual and official capacities as Zoning Director of Wilson County, Tennessee, and Jeremy Hobbs, in his individual and official capacities as a county commissioner in Wilson County, Tennessee.

## INTRODUCTION

1. The Wilson County Planning Department serves as a central point of contact for development related matters in Wilson County, Tennessee ("Wilson County" or the "County") such as rezoning requests, land subdivision proposals, commercial, industrial and multi-family development proposals, and site plan reviews.

2. The Wilson County Zoning Division is a division of the Wilson County Planning Department.

3. To obtain a building permit from the Wilson County Codes Department, a property

owner must obtain a Zoning Compliance Certificate.

4. Despite acknowledging that the property located at 4280 S. Mt. Juliet Rd., Wilson County, Tennessee ("Property") complies with all, or substantially all, Wilson County zoning requirements, Defendant Murphy Defendant Hutto, and Wilson County have refused to issue a Zoning Compliance Certificate for the Property.

5. Rather, as set forth below, Defendants have engaged in a multi-year concerted effort, based on ever changing alleged zoning violation theories, to deny issuance of a Zoning Compliance Certificate and to prevent Plaintiffs from using the Property in a lawful manner.

6. Plaintiff Byrd has expended significant resources to remedy these alleged zoning violations only to have the County identify new purported zoning violations that allegedly prevent issuance of the Zoning Compliance Certificate.

7. Plaintiffs bring these claims because Defendants have violated Plaintiffs' substantive and procedural due process rights and have subjected Plaintiffs to unequal treatment under the law in violation of the United States and Tennessee Constitution.

**PARTIES**

8. The Jack K. Byrd, Jr. Family Trust ("Trust") is the owner of the Property.

9. Jack K. Byrd III is the beneficiary of the Trust.

10. Defendant Wilson County is a county in the state of Tennessee.

11. Defendant Randall Hutto is the Mayor of Wilson County.

12. Defendant Karen Murphy is the Director of the Zoning Division of Wilson County.

13. Defendant Jeremy Hobbs is a county commissioner in Wilson County.

14. Plaintiffs bring claims against Defendants Murphy, Hutto, and Hobbs in both their individual and official capacities.

15. At all relevant times, Defendants Murphy, Hutto, and Hobbs were acting under color of state law and within the scope of their authority as officials of Wilson County, Tennessee.

16. In their individual capacities, Defendants Murphy, Hutto, and Hobbs are liable for their personal participation in the deprivation of Plaintiffs' constitutional rights, including through

their direct actions, decisions, and instructions as described herein.

17. Defendant Murphy personally violated Plaintiffs' constitutional rights by, among other things, issuing and enforcing deficient and shifting Notices of Violation, refusing to issue a Zoning Compliance Certificate despite acknowledging that the Property complied with, or substantially complied with, applicable zoning requirements, and continuing enforcement actions without a lawful basis.

18. Defendant Hutto personally violated Plaintiffs' constitutional rights by directing Defendant Murphy not to issue a Zoning Compliance Certificate for the Property, notwithstanding its compliance with applicable zoning requirements, and by interfering in the zoning process.

19. Defendant Hobbs personally violated Plaintiffs' constitutional rights by initiating and encouraging enforcement actions against Plaintiffs, including requesting that a "paper trail" be created and advocating for administrative, regulatory, or legal action despite actual knowledge that complained-of conduct did not violate the Zoning Ordinance.

20. In their official capacities, Defendants Murphy, Hutto, and Hobbs are sued as agents of Defendant Wilson County; as a result, these are claims against Wilson County.

## JURISDICTION AND VENUE

21. Jurisdiction is appropriate under 28 U.S.C. § 1331. Plaintiffs' claims arise "under the Constitution, laws, or treaties of the United States," including the Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

22. Venue in this Court is appropriate under 28 U.S.C. § 1391(b) because the Property is located in this district and because the events giving rise to this action occurred in this district.

## SPECIFIC FACTUAL ALLEGATIONS

### *A. Zoning Department First Notice of Violation*

23. On February 13, 2023, Wilson County received an online complaint from Brenda and Dallas Farmer, the owners of the property located at 3461 Pugh Road. A copy of the online complaint (the "Farmer Complaint") is attached hereto as **Exhibit A**.

24. The Farmer Complaint alleges, "the property owner [of the Property] is establishing

a gun range in an R-1 residential area."

25. The Farmer Complaint states Mr. and Ms. Farmer "talked to our County Commissioner, Jeremy Hobbs," who "will be working on this to try and get this shut down."

26. On February 23, 2023, the County issued a "1st Notice of Violation" to the Trust. A copy of the 1st Notice of Violation (the "First Notice") is attached hereto as **Exhibit B**.

27. The First Notice states the Property "is in violation of the Wilson County Zoning Ordinance" due to a "storage container being placed on the property without first applying for a building permit."

28. The First Notice cites Article 6.20.01 of the Wilson County Zoning Ordinance, entitled "Building Permit Required," as providing the basis for the First Notice.

29. In an email dated March 1, 2023, from Defendant Murphy to Brenda and Dallas Farmer, Defendant Murphy stated, "[u]nfortunately, shooting/target practice by the property owner and/or friends of the property owner is not considered a violation of the Wilson County Zoning Ordinance. . . . I apologize, I can't help you with your complaint regarding the shooting/target practice." The March 1, 2023 email from Defendant Murphy to Brenda and Dallas Farmer is attached hereto as **Exhibit C**.

30. In another email dated March 1, 2023, from Defendant Murphy to Defendant Hobbs, Defendant Murphy stated, "[r]egarding the target practice, we do not have anything in the Wilson County Zoning Ordinance that prohibits someone from shooting on their property." A copy of the March 1, 2023 email from Defendant Murphy to Defendant Hobbs is attached hereto as **Exhibit D**.

***B. <u>Zoning Department Second First Notice of Violation</u>***

31. On March 20, 2023, despite previously being advised that the Wilson County Zoning Ordinance did not prevent a property owner from shooting property zoned R-1 Residential, Defendant Hobbs sent an email to Defendant Murphy stating, "I'm not trying to wear you out but if you would start a paper trail on this shooting range because I know it will be a hot topic soon appreciate it." A copy of the March 20, 2023 email from Defendant Hobbs to Defendant Murphy

is attached hereto as **Exhibit E**.

32. On March 24, 2023, the County issued a second "1st Notice of Violation" (the "Second First Notice"). A copy of the Second First Notice is attached hereto as **Exhibit F**.

33. The Second First Notice states, "reports of gunfire and photo submittal from the public show[s] tactical training" at the Property and states the Property is in violation of the Wilson County Zoning Ordinance.

34. As stated in Defendant Murphy's March 1, 2023 emails, the Wilson County Zoning Ordinance does not prohibit shooting and target practice in R-1 Residential Zones.

35. The Second First Notice cites only section 6.20.01 of the Wilson County Zoning Ordinance, entitled Building Permit Required, as the basis for the alleged zoning violation.

36. Prior to sending the Second First Notice, the County did not conduct any inspection or investigation and had no factual basis to support the assertion that the Property was being used to operate "a tactical training business."

***C. Zoning Department Second Notice of Violation***

37. On May 11, 2023, the County issued a "2nd Notice of Violation" (the "Second Notice"). A copy of the Second Notice is attached hereto as **Exhibit G.**

38. Other than the date, the Second Notice is identical to the Second First Notice.

39. The Second Notice asserts "reports of gunfire and photo submittal from the public show[s] tactical training" at the Property and states the Property is in violation of the Wilson County Zoning Ordinance.

40. As noted in the March 2023 emails, however, Defendant Murphy had previously determined that shooting and target practice are not prohibited by the Wilson County Zoning Ordinance.

41. The Second Notice again cites only section 6.20.01 of the Wilson County Zoning Ordinance as the basis for the alleged zoning violation.

42. Prior to sending the Second Notice, the County did not conduct any inspection or investigation and had no factual basis to support the assertion that the Property was being used to

operate "a tactical training business."

43. At the time Wilson County sent the Second Notice, there was no basis to support the assertion that "a tactical training business" was being operated on the Property.

44. In response to the Second Notice, Plaintiff Byrd submitted an Affidavit (the "Byrd Affidavit") in which he testified that the Property has never "been used for commercial applications." A copy of the Byrd Affidavit is attached hereto as **Exhibit H.**

45. In the Byrd Affidavit, Plaintiff Byrd also testified that (1) he had never charged anyone to use the Property; and (2) the Property had never "hosted a sanctioned training event by a corporation or commercial entity."

***D. <u>Zoning Department Third Notice of Violation</u>***

46. Five months later, on September 12, 2023, the County sent what it entitled a "3rd Notice of Violation" (the "Third Notice"). A copy of the Third Notice is attached hereto as **Exhibit I**.

47. Having apparently concluded it had no factual basis to assert that Plaintiff Byrd was conducting a "tactical training business" on the Property, the Third Notice of Violation removes that assertion.

48. In the Third Notice, the County asserts a new alleged violation of the Wilson County Zoning Ordinance claiming, for the first time, that the Property was being used as a "parking lot for Solaren Risk Management commercial vehicles" and stated, "a parking lot is allowed in the C-2 Commercial Zone but not in an R-1 Residential zone."

49. Despite describing this as a Third Notice, the County had not provided any prior notice to Plaintiffs that parking vehicles on the Property constituted a violation of the Wilson County Zoning Ordinance.

50. The Third Notice also refers to a "storage container" being "placed on the property without first applying for a building permit" and referred to Article 6.20.01 of the Wilson County Zoning, entitled "Building Permit Required," as the alleged basis for the violation.

51. The Third Notice also quotes, for the first time in any Notice of Violation, Article

5.10.02 of the Zoning Ordinance, entitled “Uses Permitted: Accessory Detached Dwelling Units and Internal Accessory Dwelling Quarters.”

52. The Third Notice does not contain any explanation for how Article 5.10.02, which describes, among other things, sewer and septic requirements as well as utility connection requirements for accessory detached dwelling units, applies either to the Property.

***E. <u>Final Notice of Violation and Zoning Litigation</u>***

53. On December 28, 2023, the County issued a “Final Notice of Violation [and] Intent to Pursue Court Action” (the “Final Notice” and collectively, with the First Notice, the Second First Notice, the Second Notice, and the Third Notice, the “Notices”). A copy of the Final Notice is attached hereto as **Exhibit J**.

54. The Final Notice is identical to the Third Notice.

55. The Final Notice of Violation states, “a parking lot is allowed in the C-2 Commercial Zone but not in a R-1 Residential zone.”

56. The Final Notice again refers to a “storage container” being “placed on the property without first applying for a building permit” and refers to Article 6.20.01 of the Wilson County Zoning Ordinance, entitled “Building Permit Required,” as providing the basis for the First Notice.

57. The Final Notice also quotes Article 5.10.02 of the Zoning Ordinance but does not contain any explanation for how Article 5.10.02, which describes, among other things, sewer and septic requirements as well as utility connection requirements for accessory detached dwelling units, applies to the Property.

58. On February 27, 2024, Defendant Murphy instructed the city attorney for the County to file a complaint against the Property owner.

59. The County filed suit (the “Zoning Litigation”) against the Trust on February 28, 2025, alleging a storage container had been placed on the Property without first applying for a building permit and alleging that the Property was being used as a parking lot for commercial vehicles of Solaren Risk Management.

60. The Complaint in the Zoning Litigation sought a permanent injunction requiring

the removal of all items from the Property that the County alleged were in violation of the Wilson County Zoning Ordinance.

61. The Zoning Litigation asserts alleged zoning violations that were not previously identified in any of the Notices.

### *F. Remediation and Compliance Efforts*

62. Since acquiring the Property on May 12, 2022, Plaintiffs have been committed to complying with all applicable zoning and land-use requirements.

63. Before undertaking material development of the Property, Plaintiff Byrd worked directly with Ray Justice and other Wilson County Planning personnel regarding surveying, zoning classifications, and permissible uses of the Property.

64. Following the Notices and throughout the pendency of the Zoning Litigation, Plaintiff Byrd has repeatedly attempted to resolve the County's concerns and achieve compliance with all applicable zoning requirements.

65. Defendants' Notices were constitutionally deficient because they failed to identify clearly the zoning ordinances allegedly violated.

66. Plaintiff Byrd regularly communicated and met with Wilson County officials to address the alleged violations and achieve compliance.

67. For example, after receiving the Second First Notice, Plaintiff Byrd acknowledged the Notice in writing, requested a meeting with then Planning Director Tom Brashear and Defendant Hobbs regarding the Property, and repeatedly followed up when a meeting was not promptly scheduled.

68. Plaintiff Byrd also submitted the Byrd Affidavit explaining that the Property had not been used for commercial purposes, that no participant had ever been charged to use the Property, and that the Property had never hosted a sanctioned corporate training event.

69. After Plaintiff Byrd submitted the Byrd Affidavit, then Planning Director Tom Brashear concluded no basis existed for further zoning enforcement.

70. When the County later replaced the container and alleged tactical training as the

basis for its alleged zoning violation with commercial-vehicle parking as the basis for its alleged zoning violation, Plaintiff Byrd removed or caused the removal of the commercial vehicles and equipment to ensure compliance.

71. Each time the County changed its theory on alleged zoning violations, Plaintiff Byrd addressed and resolved the allegations and continued to seek a negotiated and administrative resolution.

72. During 2025, for example, Plaintiff Byrd took the following actions to comply with County allegations including painting structures, installing doors and signs, addressing alleged illegal dumping, and seeding and stabilizing disturbed areas

73. Plaintiff Byrd also installed drainage measures including a retention pond and French drain as well as sound mitigation work including the addition of earthen berms, planting trees, and building a rifle wall and side walls.

74. Each time Plaintiff Byrd remediated an alleged violation, however, the County identified new alleged deficiencies.

75. From 2023 through 2025, Plaintiff Byrd requested inspections, sought administrative resolution of the alleged zoning violations, undertook substantial efforts to address each issue identified by the County, and repeatedly requested confirmation that the Property was in compliance and eligible for issuance of a Zoning Compliance Certificate.

76. Defendant Murphy testified in her deposition in the Zoning Litigation that she felt she needed to consult with Mayor Hutto before issuing a Zoning Compliance Certificate and that, from what she had been told, Mayor Hutto was preventing resolution of the matter.

77. Defendant Murphy testified in her deposition in the Zoning Litigation that, since becoming Zoning Director, she had never previously been required to consult with or seek approval from the County Mayor before performing her duties, including issuing a Zoning Compliance Certificate.

78. Wilson County, Defendant Murphy, and Defendant Hutto have not followed the County's policies and procedures regarding the issuance of zoning violation notices and the filing

of zoning litigation.

79. Defendant Murphy has admitted in sworn deposition testimony that Plaintiffs have not been treated fairly in this process.

80. Defendant Murphy testified in sworn deposition testimony that she would not want other County residents to be treated the way that Plaintiffs have been treated.

81. Despite Plaintiffs' repeated efforts to cooperate with County officials, remediate alleged violations, and submit to further inspections, Defendants continued to identify and assert new bases for withholding the requested Zoning Compliance Certificate.

***G. Defendants Hold a Community Meeting***

82. Upon information and belief, Defendant Hobbs, an elected official, and Defendant Murphy organized a meeting of community members regarding the Property and a potential resolution of the Zoning Litigation (the "Community Meeting").

83. Upon information and belief, County Commissioner Haskell Evans, an elected public official, was also present at the Community Meeting.

84. The Community Meeting was conducted by County Attorney Mike Jennings.

85. Defendant Murphy and Ty Buhler, the County Zoning Inspector, were both present at the Community Meeting.

86. In total, approximately 25 people attended the Community Meeting, which lasted for at least an hour and a half.

87. Plaintiffs were never provided notice of the Community Meeting

88. Upon information and belief, the Community Meeting was held for the purpose of soliciting opposition to the Property, creating additional bases to support refusal to issue the Zoning Compliance Certificate, and directly influenced the County's decision to expand the scope of the Zoning Litigation.

***H. Continued Zoning Litigation***

89. Following the Community Meeting, the Complaint in the Zoning Litigation was amended to include a claim for alleged operation of a "tactical training business" on the Property.

90. In addition, the Amended Complaint asserts a violation for alleged construction of a new structure without applying for a building permit.

91. The allegation regarding construction of a new structure without applying for a building permit was not identified in any of the Notices previously provided to Plaintiffs.

92. The Amended Complaint also added an alleged violation for operation of a "second business, 'BLS Outdoor Living'" on the Property.

93. The allegation regarding alleged operation of BLS Outdoor Living on the Property was not identified in any of the Notices previously provided to Plaintiffs.

94. At all relevant times, Defendant Wilson County, Tennessee, acting through its officials and policymakers, maintained policies, customs, or practices that caused the deprivation of Plaintiffs' constitutional rights.

95. Defendant Hutto, as Mayor of Wilson County, possessed final policymaking authority with respect to zoning enforcement decisions and the issuance of Zoning Compliance Certificates, or, alternatively, exercised final decision-making authority in this matter.

96. Defendant Hutto's directive that a Zoning Compliance Certificate should not be issued, despite the Property's compliance with applicable zoning requirements, constituted an official act or decision of Wilson County.

97. Defendant Murphy acted pursuant to and in furtherance of this directive, and her refusal to issue the Zoning Compliance Certificate was made in accordance with this policy or decision.

98. The policies, practices, and decisions described herein were the force behind the violations of Plaintiffs' constitutional rights, including their rights to due process and equal protection.

**COUNT I**
**(as to Wilson County and Official-Capacity Defendants)**
**42 U.S.C. 1983 and Article I, Section 21 of the Tennessee Constitution - Unlawful Taking**

99. The preceding paragraphs are incorporated herein by reference.

100. The Fifth Amendment to the United States Constitution prohibits the government from taking private property without just compensation.

101. The Fifth Amendment is applicable to the states through the Fourteenth Amendment.

102. A regulatory taking occurs when a land-use rule restricts a private property owners' ability to use his own property.

103. Defendants know the Wilson County R-1 Residential zone does not prohibit shooting on property so zoned.

104. Defendants' delay and refusal to issue a Zoning Compliance Certificate is undertaken for the purpose of preventing lawful use of the Property.

105. There is no basis in law for Defendants' delay and refusal to issue a Zoning Compliance Certificate for the Property.

106. By refusing to issue a Zoning Compliance Certificate for the Property, Defendants have taken Plaintiffs' property without just compensation.

107. Article I, Section 21 of the Tennessee Constitution likewise prohibits the taking of private property without just compensation.

108. By refusing to issue a Zoning Compliance Certificate for the Property and thereby preventing Plaintiffs' lawful use of the Property, Defendants have violated Plaintiffs' rights secured by Article I, Section 21 of the Tennessee Constitution.

109. Plaintiffs are entitled to all relief available under Tennessee law.

110. Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to recover the damages caused by this violation.

111. Further, pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover the costs and expenses (including attorneys' fees) they have incurred in pursuing this action.

**COUNT II**
**(as to All Defendants)**
**42 U.S.C. 1983 and Article I, Section 8 of the Tennessee Constitution - Substantive Due Process**

112. The preceding paragraphs are incorporated herein by reference.

113. The Fourteenth Amendment to the United States Constitution prohibits deprivation of property without due process of law.

114. There is no basis in law for Defendants' delay and refusal to issue a Zoning Compliance Certificate for the Property.

115. By refusing to issue a Zoning Compliance Certificate for the Property, Defendants have violated Plaintiffs' substantive due process rights.

116. Defendants' asserted basis for enforcement has repeatedly changed throughout the course of the dispute.

117. As soon as Plaintiffs remedied an alleged zoning violation, the County identified additional alleged violations to justify the refusal issue a Zoning Complaint Certificate and preventing lawful use of the Property.

118. By refusing to issue a Zoning Compliance Certificate, despite recognition that shooting on the Property is not prohibited by the Wilson County Zoning Ordinance, Defendants have violated Plaintiff's substantive due process rights.

119. Article I, Section 8 of the Tennessee Constitution prohibits deprivation of property except by the law of the land and protects against arbitrary governmental action.

120. Defendants' actions in refusing to issue a Zoning Compliance Certificate despite the absence of a lawful basis for doing so were arbitrary, capricious, and unlawful.

121. By engaging in such conduct, Defendants violated Plaintiffs' rights secured by Article I, Section 8 of the Tennessee Constitution.

122. Plaintiffs are entitled to all relief available under Tennessee law.

123. Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to recover the damages caused by this violation.

124. Further, pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover the costs and expenses (including attorneys' fees) they have incurred in pursuing this action.

**COUNT III**
**(as to all Defendants)**
**42 U.S.C. 1983 and Article I, Section 8 and Article XI, Section 8 of the Tennessee Constitution - Equal Protection**

125. The preceding paragraphs are incorporated herein by reference.

126. The Fourteenth Amendment of the United States Constitution prohibits unequal treatment under the law.

127. Defendants have treated Plaintiffs differently from all other property owners in Wilson County who have requested Zoning Compliance Certificates.

128. Defendant Murphy has admitted in sworn deposition testimony that Plaintiffs have not been treated fairly in this process.

129. Defendant Murphy testified in sworn deposition testimony that she would not want other County residents to be treated the way that Plaintiffs have been treated.

130. By singling out Plaintiffs for unfair treatment different than that afforded to other property owners without a legitimate legal basis, Defendants have violated Plaintiffs' right to equal protection under the law.

131. Article XI, Section 8 and Article I, Section 8 of the Tennessee Constitution prohibit arbitrary and unequal treatment by governmental actors.

132. Defendants intentionally treated Plaintiffs differently from similarly situated property owners without a legitimate governmental basis.

133. Such conduct violated Plaintiffs' rights secured by Article XI, Section 8 and Article I, Section 8 of the Tennessee Constitution.

134. Plaintiffs are entitled to all relief available under Tennessee law.

135. Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to recover the damages caused by this violation.

136. Further, pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover the costs and expenses (including attorneys' fees) they have incurred in pursuing this action.

**COUNT IV**
**(as to all Defendants)**
**42 U.S.C. 1983 and Article I, Section 8 of the Tennessee Constitution - Procedural Due Process**

137. The preceding paragraphs are incorporated herein by reference.

138. The Fourteenth Amendment to the United States Constitution prohibits deprivation of property without due process of law.

139. There is no basis in law for Defendants' delay and refusal to issue a Zoning Compliance Certificate for the Property.

140. By refusing to issue a Zoning Compliance Certificate for the Property, Defendants have violated Plaintiffs' procedural due process rights.

141. Defendants' asserted basis for enforcement repeatedly changed throughout the course of the dispute.

142. As soon as Plaintiffs remedied an alleged zoning violation, the County identified additional violations to preclude issuance of the Zoning Complaint Certificate and prevent lawful use of the Property.

143. The Zoning Litigation asserts alleged zoning violations that were not previously identified in any of the zoning notices.

144. Defendant Murphy testified that she felt she needed to consult with Mayor Hutto before issuing the certificate and that, from what she had been told, Mayor Hutto was preventing resolution of the matter.

145. Defendant Murphy testified that, since becoming Zoning Director, she had never previously been required to consult with or seek approval from the County Mayor before performing her duties, including issuing a Zoning Compliance Certificate.

146. Wilson County, Defendant Murphy, and Defendant Hutto have not followed the County's policies and procedures regarding the issuance of zoning violation notices and the filing of zoning litigation.

147. Article I, Section 8 of the Tennessee Constitution guarantees that protected property

interests shall not be deprived except by the law of the land.

148. Defendants failed to follow established Wilson County procedures governing zoning enforcement and issuance of Zoning Compliance Certificates.

149. Defendants' actions deprived Plaintiffs of the procedural protections guaranteed by Article I, Section 8 of the Tennessee Constitution.

150. Plaintiffs are entitled to and all other relief available under Tennessee law.

151. Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to recover the damages caused by this violation.

152. Further, pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover the costs and expenses (including attorneys' fees) they have incurred in pursuing this action.

**COUNT V**
**(as to all Defendants)**
**42 U.S.C. 1983 and Article I, Section 8 of the Tennessee Constitution - Procedural Due Process**

153. The preceding paragraphs are incorporated herein by reference.

154. The Fourteenth Amendment to the United States Constitution prohibits deprivation of property without due process of law.

155. Under procedural due process, the Defendants were required to provide notice reasonably calculated to appraise Plaintiffs of the nature of alleged violations and a meaningful opportunity to be heard prior to filing a lawsuit.

156. Defendants' First Notice, Second First Notice, Second Notice, Third Notice, and Final Notice ("Notices") were constitutionally deficient because they failed to identify clearly the zoning ordinances allegedly violated.

157. Defendants' Notices were constitutionally deficient because they did not contain a factual basis to support the alleged zoning violations.

158. Defendants' Notices were constitutionally deficient because they were vague, inconsistent and shifting in their stated basis.

159. Defendants' notices did not provide Plaintiffs with the opportunity to achieve compliance prior to the initiation of the Zoning Litigation.

160. By not providing adequate notice and a meaningful opportunity to be heard, Defendants have violated Plaintiffs' procedural due process rights.

161. Article I, Section 8 of the Tennessee Constitution required Defendants to provide notice reasonably calculated to apprise Plaintiffs of the nature of the alleged violations and a meaningful opportunity to respond.

162. Defendants failed to provide adequate notice of the allegations against Plaintiffs and failed to provide a meaningful opportunity to be heard before filing the zoning enforcement action.

163. Defendants thereby violated Plaintiffs' rights secured by Article I, Section 8 of the Tennessee Constitution.

164. Plaintiffs are entitled to all relief available under Tennessee law.

165. Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to recover the damages caused by this violation.

166. Further, pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover the costs and expenses (including attorneys' fees) they have incurred in pursuing this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Enter judgment in favor of Plaintiffs and against Defendants for compensatory damages in an amount to be proved at trial;

2. Award punitive damages against the individual Defendants, Murphy, Hutto, and Hobbs, in their individual capacities, for their willful, malicious, and/or reckless disregard of Plaintiffs' constitutional rights;

3. Enter an order requiring Defendants to issue a Zoning Compliance Certificate for the Property, or otherwise cease obstructing Plaintiffs' lawful use of the Property;

4. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

5. Award pre- and post-judgment interest as allowed by law;

6. Grant such other and further relief, at law or in equity, to which Plaintiffs may be entitled; and

Dates this the 8th day of September 2026.

Respectfully submitted,

*<u>/s/ Heather H. Wright</u>*
Heather H. Wright (TN Bar No. 030649)
Allison J. Bojczuk (TN Bar No. 042440)
BUCHALTER LLP
1 Music Cir S Suite 300
Nashville, TN 37203
Phone: (615) 986-3718
Email: hwright@buchalter.com
Email: abojczuk@buchalter.com

*Attorneys for Plaintiffs*